1  Elizabeth H. Murphy (CA State Bar No. 174095)
2  Liz@lizmurphylaw.com
   Jason P. Brown (CA State Bar No. 266472)
3  Jason@lizmurphylaw.com
   MURPHY LAW GROUP
4  500 S. Grand Ave., Suite 2080
5  Los Angeles, CA 90071
   Telephone:    (213) 873-8100
6  Facsimile:    (213) 873-8110
7
8  Attorney for PLAINTIFF
   PAPER FIRST AFFILIATES, LLC
9
                    UNITED STATES DISTRICT COURT
10
                   CENTRAL DISTRICT OF CALIFORNIA
11

12  PAPER FIRST AFFILIATES, LLC, a          CASE NO.
    California limited liability company,
13                                          CV12- 06861 MWF (VBK)
                                            COMPLAINT
14              Plaintiff,
                                            (1) BREACH OF FIDUCIARY DUTY;
15       v.                                 (2) WILLFUL, WANTON, AND
                                                RECKLESS PROFESSIONAL
16                                              NEGLIGENCE;
    McGLADREY, LLP formerly doing           (3) FRAUD;
17  business as MCGLADREY & PULLEN,         (4) BREACH OF CONTRACT;
    LLP, a Minnesota limited liability      (5) BREACH OF THE COVENANT OF
18  partnership, and DOES 1 through 10          GOOD FAITH & FAIR DEALING;
19  inclusive,                              (6) WILLFULLY NEGLIGENT
                                                MISREPRESENTATION & NON-
20              Defendants.                      DISCLOSURE;
                                            (7) UNJUST ENRICHMENT; AND
21                                          (8) UNFAIR COMPETITION
22
                                            DEMAND FOR JURY TRIAL
23
24
25       Paper First Affiliates, LLC ("Plaintiff"), a Delaware limited liability company with its
26
   principal place of business in California, complains and alleges against Defendant
27
   McGladrey, LLP, formerly McGladrey & Pullen, LLP ("McGladrey"), a Minnesota limited
28
   liability company, and DOES 1 through 20 as follows:

## THE PARTIES

1.     Plaintiff is a Delaware limited liability company qualified to do business in the State of California with its principal place of business (corporate residence) in Walnut Creek, California.  Until October, 2010, Plaintiff's principal place of business was in Orlando, Florida.  Plaintiff is an organization of independent party stores that is member-owned. Plaintiff is operated by a small office staff of five (5) individuals who report to a Board of Managers.  The office staff works with vendors to establish pricing and product programs, develop advertising and operational support programs, organize meetings and an annual convention, and provide other services to help Plaintiff's members.

2.     Upon information and belief, Defendant McGladrey is a limited liability partnership incorporated in Minnesota.  McGladrey provides accounting and financial services throughout the United States, including California and Los Angeles County.  Upon information and belief, McGladrey has its principal place of business (corporate residence) in Chicago, Illinois.

3.     The true names and capacities, whether individual, corporate or otherwise, of Defendants DOES 1 through 20, inclusive are unknown to Plaintiff, which therefore sues said Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege the Defendants' true names and capacities when they are ascertained.  Plaintiff is informed and believes, and based thereon alleges that each such fictitiously named Defendant is in some way responsible for the acts and wrongs alleged in this Complaint.  McGladrey and DOES 1 through 20 are referred to collectively hereinafter as "Defendants."

4.     Plaintiff is informed and believes, and based thereon alleges that at all relevant times to this lawsuit, each of the Defendants was and now is the agent, servant, employee, representative, and/or alter ego of each of the other Defendants, and in doing the things mentioned hereinafter, was acting within the scope of his authority as such agent, servant, employee, representative and/or alter ego, with the permission and consent of the remaining Defendants.  In addition, Plaintiff is informed and believes, and based thereon alleges that at all relevant times mentioned herein, the individual accountants who provided tax preparation

services and federal and state tax advice to Plaintiff were acting as actual or ostensible agents of Defendants.  Plaintiff is also informed and believes, and based thereon alleges, that at all relevant time mentioned herein, Defendants intentionally induced or encouraged each of the other Defendants' activities, or had the right and ability to control each of the other Defendants' activities, and derived a direct financial benefit from such activities.

5.     On or about January 14, 2009, Plaintiff engaged Defendants to provide tax preparation services and federal and state tax advice relating to Plaintiff's business.  Some of the parties' obligations are set forth in, among other documents, a January 14, 2009 engagement letter and annexed Terms and Conditions ("the Contract").  As a result of Defendants repeatedly failing to adhere to the standard of care in providing their services, ineptly providing these services, providing services in a grossly negligent, willfully negligent, and wantonly negligent manner, failing to remedy the deficiencies in the services they provided in response to Plaintiff's reasonable requests, and recklessly, willfully, and wantonly disregarding and breaching contractual and statutory duties owed to Plaintiff, Plaintiff terminated its relationship with Defendants in 2012.  Plaintiff now sues for the damages it suffered at Defendants' hands.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between corporate citizens of different states.

7.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(a) in that all of the Defendants are subject to personal jurisdiction at the time the action is commenced and a substantial part of the events or omissions on which the claims are based occurred in Los Angeles County:  Defendants' Los Angeles-based representatives provided California tax advice to Plaintiff.

8.     Jurisdiction and venue are also proper in this Court because of Section 4.10 of the Contract, which provides: "[A]ny dispute or claim . . . will be governed by and construed in accordance with the laws of the state in which our office providing the services is located

1    without regard to provisions governing conflict of laws.  All litigation or other legal

2    proceedings will be brought in the State or Federal courts located in that state.  The parties

3    agree to this choice of law, jurisdiction and venue, and waive any defense of an inconvenient

4    forum." Defendants provided tax preparation services and federal and state tax advice to

5    Plaintiff in California, including filing Plaintiff's tax returns in California.  Thus, by virtue of

6    the parties' agreement, this Court has jurisdiction and venue over this matter.

## FACTS

7

8         9.      Pursuant to the Contract, Defendants agreed to provide tax preparation services

9    and federal and state tax advice to Plaintiff for the tax year ending December 31, 2009, and

10   specifically to "exercise due and professional care and judgment to include all required

11   information in your tax returns," and prepare and file returns in all jurisdictions "requested

12   by [Plaintiff] in writing."  Defendants warranted that such "services [would] be performed

13   with reasonable care in a diligent and competent manner."

14        10.     Defendants also promised to notify Plaintiff of any return position that might

15   result in a penalty (Section 1.1 of "Terms and Conditions"); invited Plaintiff to contact

16   Defendants if Plaintiff was "concerned about the potential application of tax penalties"

17   (Terms and Conditions, Section 1.6) or wanted "greater certainty regarding the tax treatment

18   of any particular transaction (Section 2.6); and encouraged Plaintiff to "notify [Defendants]

19   immediately to discuss the impact on [its] analysis and conclusions." (Section 2.2).  In

20   addition, Defendants advised, "[i]n connection with your tax returns, or in response to your

21   request(s), we may provide you with Federal, state, local or international tax advise

22   concerning matters that are not the subject of a separate arrangement letter." (Certain

23   Additional Services).

24        11.     Because the services that Defendants provide include various tax preparation

25   and federal and state tax advice, they constitute services that affect the public interest.  First,

26   Defendants' business is regulated by the State of California.  Second, Defendants perform a

27   service of great importance to the public, which is often a matter of practical necessity.

28   Third, Defendants hold themselves out as willing to perform tax and accounting services for

any member of the public who seeks it.  In fact, as part of inducing Plaintiff to hire and retain Defendants in providing their services, Defendants claimed, among other things, to have expertise in the provision of such services, and that by hiring Defendants to provide such services, Plaintiff would experience a marked improvement in terms of the efficient and cost-effective handling of those services.  Fourth, Defendants possess a decisive advantage of bargaining strength against any member of the public, including Plaintiff, which seeks Defendants' services.  Fifth, Defendants present the public, including Plaintiff, with a standardized adhesion contract of exculpation, and make no provision whereby a purchaser, including Plaintiff, may pay additional reasonable fees and obtain protection against Defendants' wrongdoing.  Indeed, notwithstanding the fact that exculpatory clauses are void against public policy on claims for negligence affecting the public interest, willful and wanton professional negligence, intentional torts, breach of fiduciary duty, and negligent misrepresentation, Defendants insisted that Plaintiff sign the Contract – its standardized adhesion contract of exculpation – before agreeing to provide services to Plaintiff.  Finally, the person or property of the purchaser, including Plaintiff's, is placed under Defendants' control, subject to Defendants' risk of carelessness.

12.     Although Plaintiff cooperated and otherwise complied fully with its obligations under the Contract, Defendants did not.

13.     In early 2009, Plaintiff considered moving its headquarters from Florida to California and, throughout that summer, communicated extensively with Defendants, both in writing and orally, regarding the potential tax consequences that such a move would have upon Plaintiff and its members.  Defendants assured Plaintiff repeatedly that *other than* a tax of approximately $5,000.00 to $7,000.00 to Plaintiff, there would be no other tax ramifications to Plaintiff or its members.  In April, 2010, in reliance upon Defendants' assurances and representations, Plaintiff's Board approved the move.

14.     Plaintiff completed its move in October, 2010.  Defendants then prepared and filed tax returns on Plaintiff's behalf apportioning taxable income to Plaintiff's non-California members, the fact or consequences of which Plaintiff had not been advised.

15.     Beginning in June, 2011, the first date upon which Plaintiff began to suspect a problem, Plaintiff's members began to receive "Demands for Tax Return" (the "Demands") from the California Franchise Tax Board (the "FTB").  At that time, Plaintiff realized that Defendants' tax services and advice relating to the California move had had the effect of, among other things, causing negative but avoidable tax consequences to Plaintiff's non-California members.  Plaintiff immediately sought further advice from Defendants as to what was happening and what it should do to resolve the situation.  In response, Defendants assured Plaintiff, both in writing and orally, that these "Demands" were not an issue, and advised Plaintiff to take a "wait and see" approach, explaining that the FTB might simply ignore and/or forget about the Demands.  When additional Plaintiff members began receiving similar Demands, it was clear that Defendants' "do nothing" approach was not working.  Plaintiff *again* requested Defendants' advice, guidance, and help as to how to resolve the situation.

16.     Defendants then did a complete turnaround, advising Plaintiff, both in writing and orally, that instead of doing nothing, Defendants should amend its 2008 and 2009 returns, such that Plaintiff's non-California members would be allocated no income.  Defendants would then provide K1's to Plaintiff's members, who would then respond to the FTB with a letter drafted by Defendants, attaching the amended K1, and challenging the California tax based upon the fact that these members did not do business in California.  At no time did Defendants advise Plaintiff as to how long it would take for the FTB to process these documents and/or what additional fines, fees, assessments and/or other penalties might be assessed in the interim.  Defendants filed the amended returns with the FTB in October, 2011, and the FTB apparently received them on November 7, 2011.

17.     Defendants devised an additional strategy, whereby they would contact the FTB directly and request a formal Chief Counsel ruling that Plaintiff's non-California members were not "doing business" in California.  Defendants advised Plaintiff, both in writing and orally, that the FTB had advised Defendants that it understood Plaintiff's position and would likely approve Defendants' formal request.  In early January, 2012,

Defendants prepared and submitted the necessary paperwork to the FTB, to which the FTB would respond, according to Defendants, within 60 days.

18.    Throughout this time, Plaintiff's members continued receiving FTB Demands, and began receiving additionally ominous notices, such as "Notices of Assessments," "Denials of Protest" and various collection demands.  With each new notice came communications from Plaintiff to Defendants, complaining that Defendants' new plan was failing, and seeking advice and guidance of some sort of alternative.  Each time, Defendants assured Plaintiff, both in writing and orally, that its members should stay the (new) course, i.e., respond to the FTB by providing the amended returns, amended K1's, and Defendants' prepared letter.  By this point, the monetary demands to Plaintiff's members had risen from $800.00 into the thousands of dollars, as the FTB continued to assess, taxes, fines, attempts to collect, levy, and otherwise penalize Plaintiff's members based upon their purported "California income."  Still – Defendants assured Plaintiff that its new course was the right one.

19.    In early January, 2012, Defendants flipped their approach yet again, this time advising Plaintiff, both in writing and orally, to tell its members to file California returns and pay all associated taxes.  Upon Defendants' suggestion, Defendants also established a "help line" for Plaintiff's members, and advised Plaintiff that its members would receive refunds in the future.  This new scheme had the immediate and obvious impact of causing Plaintiff and/or at least some of its members to pay the heightened amounts the FTB demanded (when they could have paid the initially lower amounts), and significantly eroding the trust and confidence that Plaintiff had spent time and resources building with its membership, and with Defendants.

20.    At this point, the damages from this fiasco are mounting and ongoing, as the FTB has yet to approve or even respond to Defendants' request for a Chief Counsel ruling, Plaintiff's members continue to be hounded by the FTB and its various collection agencies, and Plaintiff continues to suffer losses among its membership and damage to its reputation in the industry.  In response to Plaintiff's written demand for cooperation and discussion

regarding these issues, Defendants disavowed any responsibility to Plaintiff and have claimed – despite their invitation and establishment of a "help line" for Plaintiff's members – to be unaccountable for any advice they disclosed to Plaintiff orally or in emails under the terms of the Contract.

21.     Had Defendants properly advised Plaintiff regarding the tax consequences of the Plaintiff's move to California, these damages would have been avoided, Plaintiff would not have moved its headquarters office to California.  Had Plaintiff known of the terrible rippling effects of Defendants' advice, it would not have acted in reliance upon Defendants' advice to Plaintiff's great detriment.  Defendants were clearly mistaken from the start, and then compounded their errors by deliberately trying to cover up their mistakes, advising Plaintiff, both in writing and orally, to take conflicting approaches, all the while assuring Plaintiff that Defendants' advice was proper, and collecting Defendants' fees and costs at every turn.

## FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty – Against All Defendants)

22.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 21, inclusive, as though fully set forth herein.

23.     Plaintiff reposed trust and confidence in Defendants to provide faithful and accurate tax preparation and federal and state tax advice, and to place the interests of Plaintiff above Defendants.  Defendants voluntarily assumed these positions of trust and confidence for Plaintiff.  Because Defendants were Plaintiff's advisors, who were obligated to act in Plaintiff's best interests, Defendants were Plaintiff's fiduciaries.

24.     As fiduciaries, Defendants owed Plaintiff the duty of utmost good faith. Defendants were obligated to disclose all facts within their knowledge relating to tax preparation and federal and state tax advice that would have a material effect on Plaintiff.

25.     Defendants breached their fiduciary duties to Plaintiff by numerous acts and omissions, including but not limited to:

A.      Defendants misrepresented the tax ramifications to Plaintiff and its members relating to the re-location of Plaintiff's headquarters from Orlando, Florida to Walnut Creek, California.

B.      Defendants failed to inform Plaintiff of the fact of or the consequences from Defendants' preparation and filing of Plaintiff's tax returns on apportioning taxable income to Plaintiff's non-California members.

C.      Defendants misrepresented the likelihood of success of the strategy relating to the Demands for Tax Returns that Plaintiff's members began receiving in June, 2011.  Defendants assured Plaintiff that these "Demands" were not an issue, and advised Plaintiff to take a "wait and see" approach, explaining that the FTB might simply ignore and/or forget about the Demands.  This "do nothing" approach was ill-advised.

D.      Defendants made additional misrepresentations relating to the Demands, doing a complete turnaround, advising Plaintiff that instead of doing nothing, Defendants should amend its 2008 and 2009 returns.

E.      Defendants made additional material omissions by failing to advise Plaintiff as to how long it would take for the FTB to process documents and/or what additional fines, fees, assessments and/or other penalties might be assessed against Plaintiff in the interim.

F.      Defendants made misrepresentations relating to their additional strategy, whereby they would contact the FTB directly and request a formal Chief Counsel ruling that Plaintiff's non-California members were not "doing business" in California.  Despite mounting damages, Defendants assured Plaintiff that its new course was the right one.

G.      In early January, 2012, Defendants, knowing their advice was improvident, flipped their approach yet again, this time advising Plaintiff to tell its members to file California returns and pay all associated taxes.

H.      Defendants disavowed any responsibility for advice they gave to Plaintiff over the phone even though Defendants suggested and established a "help line" for Plaintiff's members.

I.     Defendants misrepresented that Plaintiff's members would receive refunds from the FTB.

26.    Defendants failed to inform and disclose to Plaintiff facts that Plaintiff should have been aware of, which were material to the transactions, which, had Plaintiff known them, Plaintiff would not have agreed to them.  Had Plaintiff known the true facts or Defendants properly disclosed the facts as Defendants knew them to be, Plaintiff never would have moved its headquarters to California and thereafter relied on Defendants' strategies.

27.    Plaintiff justifiably relied on Defendants' misrepresentations and nondisclosures, especially because Defendants held themselves out as experts in the field of tax, were Plaintiff's fiduciaries, and had superior knowledge of the existence of the true facts.

28.    As a direct and proximate result of the breaches of fiduciary duty by Defendants, Plaintiff has, or likely will, suffer damages in an amount subject to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

29.    Defendants' breaches of fiduciary duty were willful and malicious. Defendants committed such acts with the intent to injure Plaintiff.  This conduct warrants an award of punitive damages to punish Defendants to deter such wrongful conduct in the future.

## SECOND CAUSE OF ACTION

### (Willful, Wanton & Reckless Professional Negligence – Against All Defendants)

30.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

31.    By virtue of the accountant-client relationship between Defendants and Plaintiff, Defendants owed a duty to Plaintiff to use such skill, prudence and diligence as other reputable members of the accounting profession in a similar locality commonly possess and exercise under similar circumstances.  Defendants also owed a duty to Plaintiff to fully comply with their professional responsibilities and obligations.  Defendants also owed a duty

to Plaintiff to fully comply with Defendants' own internal policies and procedures and the standards governing the accounting profession. These duties included a requirement that Defendants refrain from negligent, gross, wanton, and reckless acts and that Defendants place Plaintiff's interests above their own.

32. Despite the duties of professional care Defendants owed to Plaintiff, Defendants failed to use such degree of professional care commonly possessed and exercised by other accountants, by commission, or omission, of the following acts:

A. Failing to administer Plaintiff's accounting, financial and tax affairs with proper prudence and with requisite skill, resulting in significant damage to Plaintiff;

B. Improperly and recklessly supervising, entrusting, permitting, maintaining, and/or servicing Plaintiff's accounting, tax, and financial affairs; and/or

C. Failing to place Plaintiff's interests before their own economic interests in handling, directing, and/or controlling transactions purportedly made on behalf of Plaintiff.

33. It was reasonably foreseeable that Plaintiff would rely on Defendants' guidance and representations, and Defendants did actually foresee that Plaintiff would do so.

34. Defendants' conduct in the performance of the professional services was not only negligent, but willfully negligent, wantonly negligent, grossly negligent, and reckless. As a direct result of Defendants' repeated breaches of the duties owed to Plaintiffs, as alleged herein, Defendant's violation of professional standards, Defendant's failure to exercise due care, and Defendant's willful, wanton and grossly negligent conduct, Plaintiff suffered actual damages in an amount subject to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

35. Defendants' gross, wanton, and reckless professional negligence was willful and malicious. Defendants committed such acts with the intent to injure Plaintiff. This conduct warrants an award of punitive damages to punish Defendants to deter such wrongful conduct in the future.

///

## THIRD CAUSE OF ACTION

### (Fraud – Against All Defendants)

36.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 35, inclusive, as though fully set forth herein.

37.     Defendants defrauded Plaintiff by virtue of the conduct set forth above, including the misrepresentations, acts of concealment, non-disclosure, inducements, and/or other conduct previously alleged.  During conversations and in written correspondence with Defendants, including Clay Worden and other accountants who worked on Plaintiff's matters, Defendants made material misrepresentations and nondisclosures to Plaintiff as set forth in Paragraphs 13-19, and 25, above.

38.     Plaintiff is informed and believes and thereon alleges that when Defendants made these representations, they knew them to be false and/or recklessly disregarded their falsity, and that they made them with the intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff to continue to rely on their services at great cost to Plaintiff.

39.     Defendants made such misrepresentations without any reasonable justification in order to induce Plaintiff to move its office, to continue to rely on Defendants, and most importantly, to continue to pay Defendants, thereby benefitting Defendants to the detriment of Plaintiff.

40.     At the time Defendants made such misrepresentations, and undertook acts of concealment and other fraudulent conduct as alleged above, and at the time Plaintiff took the actions alleged herein, Plaintiff was unaware of the falsity and/or misleading nature of the representations and conduct.  Even in the exercise of reasonable diligence, Plaintiff could not have discovered such falsity.

41.     In reliance on the misrepresentations and conduct of Defendants, as alleged herein, Plaintiff was induced to and did move its headquarters to California, file tax returns apportioning taxable income to Plaintiff's non-California members, do nothing with regard to the Demands that its members received, amend its 2008 and 2009 tax returns, accrue additional fines, fees, and assessments, request a formal Chief Counsel ruling, instruct its

1  members to file California tax returns and pay all applicable taxes, agree to establish a "help
2  line" for Plaintiff's members, and wait for refunds from the FTB.

3      42.    Defendants also knew their omissions were material when they made them.  If
4  Plaintiff had known the true facts and omissions, it would not have moved its headquarters to
5  California and agreed to Defendants' strategies.

6      43.    Plaintiff justifiably relied on Defendants' misrepresentations, concealment,
7  fraudulent conduct and nondisclosures, especially because Defendants held themselves out
8  as experts in the field of tax, were Plaintiff's fiduciaries, and had superior knowledge of the
9  existence of the true facts.

10      44.    Defendants' fraudulent misrepresentations and omissions were the proximate
11  cause of significant harm to Plaintiff.  Plaintiff suffered actual damages in an amount subject
12  to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

13      45.    Defendants' gross, wanton, and reckless professional negligence was willful
14  and malicious.  Defendants committed such acts with the intent to injure Plaintiff.  This
15  conduct warrants an award of punitive damages to punish Defendants to deter such wrongful
16  conduct in the future.

## FOURTH CAUSE OF ACTION

### (Breach of Contract – Against All Defendants)

19      46.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 45,
20  inclusive, as though fully set forth herein.

21      47.    Pursuant to the Contract between Defendants and Plaintiff, Defendants agreed
22  to provide tax preparation services and federal and state tax advice to Plaintiff for the tax
23  year ending December 31, 2009, and specifically to "exercise due and professional care and
24  judgment to include all required information in your tax returns," and prepare and file returns
25  in all jurisdictions "requested by [Plaintiff] in writing."  Defendants warranted that such
26  "services [would] be performed with reasonable care in a diligent and competent manner."
27  Defendants also promised to notify Plaintiff of any return position that might result in a
28  penalty (Section 1.1 of "Terms and Conditions"); invited Plaintiff to contact Defendants if

Plaintiff was "concerned about the potential application of tax penalties" (Terms and Conditions, Section 1.6) or wanted "greater certainty regarding the tax treatment of any particular transaction (Section 2.6); and encouraged Plaintiff to "notify [Defendants] immediately to discuss the impact on [its] analysis and conclusions." (Section 2.2).  In addition, Defendants advised, "[i]n connection with your tax returns, or in response to your request(s), we may provide you with Federal, state, local or international tax advise concerning matters that are not the subject of a separate arrangement letter." (Certain Additional Services).

48.     Plaintiff performed all of its obligations and responsibilities under the Contract or, alternatively, any such performance was excused.

49.     Defendants breached the Contract by failing, without justification, to competently provide all or substantially all of the tax preparation services and federal and state advice to Plaintiff.

50.     The breach of the Contract by Defendants had a substantial part in bringing about the economic losses and financial harm sustained by Plaintiff.  Plaintiff suffered actual damages in an amount subject to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

## FIFTH CAUSE OF ACTION

### (Breach of the Covenant of Good Faith & Fair Dealing – Against All Defendants)

51.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 50, inclusive, as though fully set forth herein.

52.     In every contract or agreement there is an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.  Defendants violated the duty to act fairly and in good faith.

53.  Plaintiff and Defendant entered into the Contract whereby Defendants agreed to provide tax preparation services and federal and state tax advice to Plaintiff for the tax year

ending December 31, 2009, and specifically to "exercise due and professional care and judgment to include all required information in your tax returns," and prepare and file returns in all jurisdictions "requested by [Plaintiff] in writing." Defendants warranted that such "services [would] be performed with reasonable care in a diligent and competent manner." Defendants also promised to notify Plaintiff of any return position that might result in a penalty (Section 1.1 of "Terms and Conditions"); invited Plaintiff to contact Defendants if Plaintiff was "concerned about the potential application of tax penalties" (Terms and Conditions, Section 1.6) or wanted "greater certainty regarding the tax treatment of any particular transaction (Section 2.6); and encouraged Plaintiff to "notify [Defendants] immediately to discuss the impact on [its] analysis and conclusions." (Section 2.2).

54.    Plaintiff performed all of its obligations and responsibilities under the Contract or, alternatively, any such performance was excused.

55.    Defendants breached the Contract by failing, without justification, to competently provide all or substantially all of the tax preparation services and federal and state advice to Plaintiff.

56.    Defendants unfairly interfered with Plaintiff's right to receive the benefits of the Contract when they offered to establish and did establish a "help line" for Plaintiff to deal with the mounting problems created by Defendants' ill-advised tax advice, to which Plaintiff agreed, and for which Defendants have now disavowed any accountability in providing advice orally to Plaintiff under the terms of the Contract.

57.    As a direct and proximate result of Defendants' actions, Plaintiff has been irreparably injured and has suffered monetary damages in an amount to be determined according to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

## SIXTH CAUSE OF ACTION

**(Willfully Negligent Misrepresentation & Non-Disclosure – Against All Defendants)**

58.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 57, inclusive, as though fully set forth herein.

59.    During conversations and written correspondence with Defendants, including Clay Worden and other accountants who worked on Plaintiff's matters, Defendants made material misrepresentations and nondisclosures to Plaintiff as set forth in Paragraphs 13-19, and 25, above.

60.    Plaintiff is informed and believes and thereon alleges that when Defendants made these representations, they should have known, through the exercise of reasonable care, that the representations were false.  In addition, Defendants knew or should have known about facts and intentionally ignored facts demonstrating a high probability that Plaintiff would sustain financial losses and harm as a result of Defendants' ill-advised, conflicting advice to Plaintiff, and the deliberate, attempted cover up of Defendants' mistakes.

61.    Defendants made such misrepresentations without any reasonable justification in order to induce Plaintiff to move its offices to California, and continue to rely on Defendants' strategies, thereby benefitting Defendants to the detriment of Plaintiff.

62.    At the time Defendants made such misrepresentations, and at the time Plaintiff took the actions alleged herein, Plaintiff was unaware of the falsity and/or misleading nature of the representations.  Even in the exercise of reasonable diligence, Plaintiff could not have discovered such falsity.

63.    In reliance on the misrepresentations and conduct of Defendants, as alleged herein, Plaintiff was induced to and did move its headquarters to California, file tax returns apportioning taxable income to Plaintiff's non-California members, do nothing with regard to the Demands that its members received, amend its 2008 and 2009 tax returns, accrue additional fines, fees, and assessments, request a formal Chief Counsel ruling, instruct its members to file California tax returns and pay all applicable taxes, agree to establish a "help line" for Plaintiff's members, and wait for refunds from the FTB.

64.    Defendants' willfully negligent misrepresentations were the proximate cause of significant harm to Plaintiff.  But for Defendants' misrepresentations and omissions, Plaintiff would not have moved its offices to California and relied on Defendants' strategies.  Plaintiff

has been irreparably injured and has suffered monetary damages in an amount to be determined according to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

### SEVENTH CAUSE OF ACTION

#### (Unjust Enrichment – Against All Defendants)

65.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 64, inclusive, as though fully set forth herein.

66.    As a result of the unlawful activities as described herein, Defendants received significant sums of money at Plaintiff's expense, including without limitation, fees and costs that they were not entitled to receive, in an amount to be determined according to proof at trial, but far exceeding the minimum jurisdictional amount of this Court.

67.    Defendants were unjustly enriched by this amount, and are not entitled to retain it.  Plaintiff is entitled to an order of restitution for this amount and, accordingly, it should be placed in a constructive trust on Plaintiff's behalf.

### EIGHTH CAUSE OF ACTION

#### (Unfair Competition – Against All Defendants)

68.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 67, inclusive, as though fully set forth herein.

69.    Defendants' conduct constitutes common law unfair competition and unlawful, unfair and deceptive business practices under California Business and Professions Code, Sections 17200 *et seq*.  Defendants' conduct has harmed Plaintiff by causing it to suffer losses among its membership and damage to its reputation in the industry.

70.    California Business and Professions Code, Section 17203, authorizes injunctive and restitutionary relief against any person who has engaged or proposes to engage in unfair competition.  Defendants have been unjustly enriched by virtue of their unfair competition as set forth above.

71.    Defendants have unfairly competed by repeatedly failing to adhere to the standard of care in providing their services, ineptly providing these services, providing

1   services in a grossly negligent, willfully negligent, and wantonly negligent manner, failing to

2   remedy the deficiencies in the services they provided in response to Plaintiff's reasonable

3   requests, and recklessly, willfully, and wantonly disregarding and breaching contractual and

4   statutory duties owed to Plaintiff by, among other things, insisting that Plaintiff sign the

5   Contract – its standardized adhesion contract with illegal, unconscionable, and unenforceable

6   limitation of liability/exculpatory clauses – before agreeing to provide services to Plaintiff,

7   and disavowing any responsibility for any advice offered orally to Plaintiff under the terms

8   of the Contract after offering and establishing a "help line" for Plaintiff to deal with the

9   mounting problems created by Defendants' ill-advised tax advice.

10          72.     As a direct and proximate result, Plaintiff has suffered and continues to suffer

11  actual damages according to proof, but in excess of the minimum jurisdiction of this Court.

12          73.     Plaintiff requests that the Court issue preliminary and permanent injunctive

13  relief against Defendants from engaging in the acts alleged.  Unless Defendants are

14  restrained, Defendants will continue to engage in unfair competition.  Plaintiff also requests

15  attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1
2

**WHEREFORE**, Plaintiff prays for relief on all causes of action, and respectfully requests that the Court award:

3    1.   Compensatory damages in an amount to be proven at trial;

4    2.   Exemplary/Punitive damages;

5    3.   Restitution;

6    4.   Injunctive relief;

7    5.   Attorneys' fees under California Code of Civil Procedure section 1021.5;

8    6.   Pre-judgment interest;

9    7.   Post-judgment interest; and

10    8.   Other relief as is just and proper.

11                        **DEMAND FOR JURY TRIAL**

12    Plaintiff hereby requests a trial by jury for all claims and issues that this Court deems

13    triable.

14

15    Dated:   August 9, 2012                MURPHY LAW GROUP, INC.

16

17

18

19                                           By:
20                                               Elizabeth H. Murphy
21                                               Jason P. Brown
                                                 Attorney for Plaintiff
22                                               PAPER FIRST AFFILIATES, LLC

23

24

25

26

27

28

Name & Address Elizabeth H. Murphy (SBN 174095)
Jason P. Brown (SBN 266472)
liz@lizmurphylaw.com   jason@lizmurphylaw.com
MURPHY LAW GROUP        (213) 873-8100
500 S. Grand Ave., Ste 2080,
Los Angeles, CA 90071

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PAPER FIRST AFFILIATES, LLC, a California
limited liability Company

                                    PLAINTIFF(S)

                    v.

McGLADREY, LLP formerly doing business as
McGLADREY & PULLEN, LLP, a Minnesota limited
liability partnership, and DOES 1 through 10, inclusive

                                    DEFENDANT(S).

CASE NUMBER

CV12-06861 MWF(VBKx)

**SUMMONS**

TO:   DEFENDANT(S):

        A lawsuit has been filed against you.

        Within 21 days after service of this summons on you (not counting the day you received it), you
must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint
☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer
or motion must be served on the plaintiff's attorney, Elizabeth Murphy _____, whose address is
500 S. Grand Ave., Ste 2080, Los Angeles, California 90071 _____. If you fail to do so,
judgment by default will be entered against you for the relief demanded in the complaint.   You also must file
your answer or motion with the court.

                                                Clerk, U.S. District Court

Dated:   AUG - 9 2012 _____        By: _____
                                                Deputy Clerk

                                                *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.   Allowed
60 days by Rule 12(a)(3)].*